## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: | ) |
| Chelsea Potter | ) Bankruptcy Case No. 19-60216 |
| | ) Chapter 7 |
| In re: | ) |
| Kristyn Curry | ) Bankruptcy Case No. 18-60382 |
| | ) Chapter 7 |
| In re: | ) |
| Sandra Dennis | ) Bankruptcy Case No. 19-40180 |
| | ) Chapter 7 |
| In re: | ) |
| Thomas Schnack and | ) Bankruptcy Case No. 19-40714 |
| Christy Schnack | ) Chapter 7 |
| | ) |
| In re: | ) |
| Wendell Haws | ) Bankruptcy Case No. 19-60222 |
| | ) Chapter 7 |
| In re: | ) |
| Boyce Burns and | ) Bankruptcy Case No. 19-60349 |
| Amanda Burns | ) Chapter 7 |
| | ) |
| In re: | ) |
| Betty Corey | ) Bankruptcy Case No. 20-40036 |
| | ) Chapter 7 |
| In re: | ) |
| Brandi Hill | ) Bankruptcy Case No. 20-40166 |
| | ) Chapter 7 |
| In re: | ) |
| Jason Lindsey and | ) Bankruptcy Case No. 20-40179 |
| Andrea Lindsey | ) Chapter 7 |
| | ) |
| In re: | ) |
| Cullen Bond | ) Bankruptcy Case No. 20-40199 |
| | ) Chapter 7 |
| In re: | ) |
| John Smiley | ) Bankruptcy Case No. 20-60035 |
| | ) Chapter 7 |
| In re: | ) |
| Jeff Thulin and | ) Bankruptcy Case No. 20-30103 |
| Julie Thulin | ) Chapter 7 |
| | ) |
| In re: | ) |
| Kerri Sierra Scott | ) Bankruptcy Case No. 19-30157 |
| | ) Chapter 7 |

| | | |
|---|---|---|
| In re: | ) | |
| Marc Clark and | ) | Bankruptcy Case No. 19-30720 |
| Kelly Clark | ) | Chapter 7 |
| | ) | |
| In re: | ) | |
| Ariel Mounce | ) | Bankruptcy Case No. 19-30856 |
| | ) | Chapter 7 |
| In re: | ) | |
| Harold Lalumondiere and | ) | Bankruptcy Case No. 19-30905 |
| Lisa Lalumondiere | ) | Chapter 7 |
| | ) | |
| In re: | ) | |
| Jason Turner | ) | Bankruptcy Case No. 19-30993 |
| | ) | Chapter 7 |
| In re: | ) | |
| Donald Lankford | ) | Bankruptcy Case No. 19-31097 |
| | ) | Chapter 7 |
| In re: | ) | |
| Megan Beckemeyer | ) | Bankruptcy Case No. 19-31273 |
| | ) | Chapter 7 |
| | ) | |
| In re: | ) | |
| David Miller | ) | Bankruptcy Case No. 19-31377 |
| | ) | Chapter 7 |
| In re: | ) | |
| Jamie Brucker and | ) | Bankruptcy Case No. 19-31474 |
| Angela Brucker | ) | Chapter 7 |
| | ) | |
| In re: | ) | |
| Arnold Edwards and | ) | Bankruptcy Case No. 19-31476 |
| Tracy Edwards | ) | Chapter 7 |
| | ) | |
| In re: | ) | |
| Rachael Hohensee | ) | Bankruptcy Case No. 19-31537 |
| | ) | Chapter 7 |
| In re: | ) | |
| Tiffany Cannon | ) | Bankruptcy Case No. 19-31596 |
| | ) | Chapter 7 |
| In re: | ) | |
| Ross VanDeventer and | ) | Bankruptcy Case No. 19-60152 |
| Mary VanDeventer | ) | Chapter 7 |
| | ) | |
| | ) | |
| In re: | ) | |
| Albert Johnson, II | ) | Bankruptcy Case No. 19-60320 |
| | ) | Chapter 7 |

| | |
|---|---|
| In re: | ) |
| Peggy Chapman | ) Bankruptcy Case No. 20-30177 |
| | ) Chapter 7 |
| In re: | ) |
| Angie McClatchery | ) Bankruptcy Case No. 20-30186 |
| | ) Chapter 7 |
| In re: | ) |
| Micah Scruggs and | ) Bankruptcy Case No. 20-30203 |
| Shaune Scruggs | ) Chapter 7 |
| | ) |
| In re: | ) |
| Terry Dedmon and | ) Bankruptcy Case No. 19-30087 |
| Khristie Gable | ) Chapter 7 |
| | ) |
| In re: | ) |
| Clint Jones and | ) Bankruptcy Case No. 19-31602 |
| Pamela Jones | ) Chapter 7 |
| | ) |
| In re: | ) |
| Teresa A. Reynolds | ) Bankruptcy Case No. 19-60357 |
| | ) Chapter 7 |
| In re: | ) |
| George Wise | ) Bankruptcy Case No. 20-30346 |
| | ) Chapter 7 |
| In re: | ) |
| Charles Crow and | ) Bankruptcy Case No. 20-40187 |
| Annette Crow | ) Chapter 7 |
| | ) |
| In re: | ) |
| Darryl Kulik | ) Bankruptcy Case No. 20-40288 |
| | ) Chapter 7 |
| | ) |

## **OPINION**

This matter is before the Court on the Motions to Close Case filed by UpRight Law, LLC ("UpRight") and the Objections thereto filed by the United States Trustee ("U.S. Trustee"). Each of the thirty-five cases presently before the Court is a consumer bankruptcy filed by UpRight under Chapter 7 of the Bankruptcy Code. The Debtors in each case are represented by either Eric Homa, Ronald Buch, or James Ford, all local attorneys, who are also partner attorneys with

UpRight.[1] In the interest of clarity and brevity, the Court addresses these cases together, presenting the material facts of each case in the Findings of Fact.

## **PROCEDURAL HISTORY**

As procedural background, after conducting a review of the Debtors' bankruptcy filings, the Court identified several significant areas of concern with regard to UpRight Law's pattern of practice. Specifically, the Court noticed that Debtors' counsel charged significantly more when filing cases as a partner of UpRight Law than when they filed as part of their own practices.[2] There also appeared to be an extended length of time between when Debtors would pay UpRight their attorney's fees in full and when the bankruptcy petition was actually filed.[3]  The circumstances in several cases made it seem unlikely that the Debtor would even benefit from filing bankruptcy because they were judgment-proof, while in other cases, debtors qualified for a filing fee waiver, but no waiver was sought. Further, the Statements of Financial Affairs filed with Debtors' voluntary petitions showed that several Debtors were subjected to state court actions, garnishments and repossessions while they were represented by UpRight. One of the gravest concerns for the Court was that in each case, it appeared that the debtors committed to filing under a Chapter of the Bankruptcy Code and began making payments to UpRight before

---

[1] UpRight Law, LLC, a firm headquartered in Chicago, has filed numerous cases in this District where Debtors make installment payments for attorney's fees in excess of the usual rate charged in this District and had delays in the filing of their bankruptcies after payment of fees. In each case, the file was referred to a local attorney who had executed a partnership agreement with UpRight on a limited basis to handle the referred cases. The local attorney also operates a separate law firm to file other bankruptcy cases not referred by UpRight.

[2] For example Mr. Ford typically charges $814 to $847 when he files under the Law Offices of James E. Ford, but when he files on behalf of UpRight, the fees range from $1,475 to $1,725 (See Case No. 18-60382, Doc. No. 21., Transcript from February 15, 2019 hearing, pg. 3). Attorneys in the same area in this District charge an average fee of $800.00 to $850.00 in similar cases. *Id.*

[3] *See* Case No. 19-40714 (Debtors paid UpRight attorney's fees over the course of two years before their case was ultimately filed); *See* Case No. 19-40180 (Debtor paid UpRight over the course of two years, and her case was not filed until another nine months after attorney's fees had been paid in full).

4

ever speaking to an attorney.  Based on these concerns, the Court scheduled each of these cases for a status conference.

At the conclusion of each status conference, the Court ordered the local attorneys for UpRight to file Itemized Fee Statements ("Fee Statements") detailing the specific services that were provided, who provided the services, and the amount of time that was spent providing the services. As explained more fully in the Findings of Fact, information in the Fee Statements, including the timing and nature of the Debtor's contacts with UpRight staff and the local attorney, caused concern about who was advising the Debtors during the course of their bankruptcy.

In nearly all of the cases,  the information provided in the Debtors' schedules, coupled with the information in the Fee Statements, ultimately led the U.S. Trustee to file motions for examination of both the Debtors and the local attorneys pursuant to Federal Rule of Bankruptcy Procedure 2004 ("2004 Examinations"),[4] to which UpRight objected.  After conducting hearings, the Court granted the Motions for 2004 Examinations ("Motions") over UpRight's objections. The Court concluded that further investigation was necessary in order to fully determine the scope of UpRight's representation during the period prior to the filing of the Debtors' bankruptcy petitions and the effect of that representation, or lack thereof, upon the Debtors' liabilities, property and bankruptcy estates. To date, the U.S. Trustee has conducted a number of 2004 Examinations and is in the process of scheduling the remaining approved 2004 Examinations in order to determine whether the Debtors in each cases received adequate representation.

---

[4] Bankruptcy Rule 2004(a) grants the U.S. Trustee the right, as a party in interest, to conduct an examination of the Debtors and their counsel. Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr .P. 2004.

Despite these on-going investigations, on or around July 17, 2020, UpRight filed Motions to Close Case in each case, to which the U.S. Trustee has objected. At hearing on September 16, 2020[5], the Court denied UpRight's Motions to Close and stated that a written order would issue. The Court made findings of fact on the record consisting of, but not limited to, the length of time it took UpRight to file each case after being retained by the Debtors; the amount of fees charged by UpRight; and the failure of UpRight attorneys to supervise non-attorney staff. The specific facts of each case which led the Court to its decision are explained more fully in the Findings of Fact set forth below. These facts were drawn from the Debtors' Schedules, Statement of Financial Affairs, Fee Statements provided by UpRight, and uncontested testimony from completed 2004 Examinations. The records demonstrate the Court's reasoning for keeping the cases open in order to complete the investigation into UpRight's pattern of practice and support the Court's decision to deny the Motions to Close Case.

## **FINDINGS OF FACT**

### *19-60216:  In re Potter*

Debtor Chelsea Potter paid $1,675.00 in attorney's fees to UpRight from May 12, 2018 to December 21, 2018, a period of more than seven months. However, her Chapter 7 bankruptcy petition was not filed until June 18, 2019, another six months later. UpRight referred the case to local partner, Eric Homa.  In addition to the attorney's fees, Ms. Potter also paid UpRight $335.00 for her filing fee. Although Ms. Potter qualified for a waiver of the filing fee, UpRight did not request a waiver on her behalf.

---

[5] These motions were initially set for hearing on August 12, 2020 and August 13, 2020.  However, on or about August 6, 2020, UpRight filed Motions for Leave to File Reply Brief, along with Reply Briefs attached to the Motions. At the hearings on August 12, 2020 and August 13, 2020, UpRight's Motions to file Reply Brief were granted and the U.S. Trustee was granted fourteen days to file a Responsive Brief. The hearings on the Motions to Close were then continued to September 16, 2020 in order to allow the U.S. Trustee to respond and to give the Court an opportunity to review the Briefs.

Ms. Potter's Statement of Financial Affairs shows that a creditor filed a lawsuit against her in state court in 2018, but the status of that case at the time of her bankruptcy filing was not stated. The Fee Statement filed by UpRight does not reveal any assistance to Ms. Potter regarding the collection lawsuit, even though she was making payments to UpRight during this time.

On August 21, 2019, the Court conducted a status hearing to consider the Disclosure of Compensation of Attorney filed in the case. The Court directed UpRight attorney Eric Homa to provide an itemization of attorney fees. After attorney Homa filed his Fee Statement, the U.S. Trustee filed Motions for 2004 Examinations seeking to examine Ms. Potter and attorney Homa. UpRight objected to those Motions, and then filed a Motion to Withdraw Reference to the U.S. District Court on October 4, 2019, asking the District Court to establish a presumptively reasonable attorney fee for Chapter 7 cases. Ms. Potter received her discharge on October 16, 2019. This Court granted the Motions for 2004 Examinations on November 5, 2019, and on December 9, 2019, the District Court entered its Order denying the Motion to Withdraw the Reference.

The U.S. Trustee filed an adversary proceeding on September 15, 2020 seeking an injunction against UpRight and attorney Homa and further seeking a determination that the fees charged by UpRight and attorney Homa were excessive and unreasonable and should be disgorged.[6] That adversary proceeding is currently pending before this Court.

### *18-60382: In re Curry*

Debtor Kristyn Curry paid $1,725.00 in attorney's fees to UpRight from April 17, 2018 to July 12, 2018. Her Chapter 7 case was filed on October 3, 2018. UpRight referred the case to

---

[6] *See Gargula v. Deighan Law LLC et. al.,* Adv. No. 20-6008.

local partner, James Ford.  In addition to the attorney's fees, Ms. Curry paid UpRight an additional $335.00 for her filing fee, despite the fact that Ms. Curry would have qualified for a waiver of the filing fee due to having a household size of seven persons and monthly income of $4,322.50. UpRight did not request a fee waiver on her behalf.

At a status hearing to consider the Disclosure of Compensation of Attorney filed in the case, the Court expressed concern that the attorney's fees paid by Ms. Curry far exceeded the usual fee of $847.00 charged by UpRight's partner attorney James Ford when he files cases on his own behalf and not as part of the UpRight system. The Court questioned what additional value was provided to Ms. Curry by attorney Ford's affiliation with UpRight. The Court directed the U.S. Trustee to conduct a review of the fees and provide a report to the Court.

Accordingly, the U.S. Trustee conducted Rule 2004 examinations of Ms. Curry and attorney Ford on April 9, 2019, but neither knew the basis for the $1,725.00 attorney fee. Notably, Ms. Curry testified that she had tried to cancel the UpRight contract on several occasions. In light of the inability of Ms. Curry and attorney Ford to explain the basis for the $1,725.00 attorney fee, the U.S. Trustee filed a Motion for Rule 2004 Examination of Richard Engler, the non-attorney UpRight staff person whom Ms. Curry testified had set the fee. The fee was set during Ms. Curry's initial contact with the UpRight staffer. Over UpRight's objection, the Court granted that Motion at a hearing on May 15, 2019. The U.S. Trustee then issued a subpoena upon Mr. Engler, to which UpRight responded by filing a Motion to Modify Subpoena and for Protective Order with the U.S. District Court for the Northern District of Illinois. The Northern District transferred the matter back to this Court and the parties subsequently entered into a protective order.

Mr. Engler's Rule 2004 examination was conducted on December 6, 2019 in the office of the U.S. Trustee in Chicago, Illinois. According to the transcript of that examination, Mr. Engler confirmed that he determined the amount of Ms. Curry's attorney fees using an UpRight software system that calculates the fee that is to be charged. However, he was unable to provide specifics as to the manner of that calculation.

In light of Mr. Engler's testimony, the U.S. Trustee filed a Motion for Rule 2004 Examination of James MacLelland, UpRight's Chief Operating Officer, on June 8, 2020. UpRight filed an Objection to the U.S. Trustee's Motion, and after a hearing on July 8, 2020, the Court entered an Order granting the Motion. The status hearing on the Disclosure of Compensation of Attorney has been continued generally while the U.S. Trustee pursues the fee information requested by the Court.

### 19-40180: In re Dennis

Debtor Sandra Dennis paid $1,760.00 to UpRight from July 2, 2016 to June 5, 2018, a period of nearly two years. Her Chapter 7 bankruptcy case was not filed until March 13, 2019, an additional nine months later. UpRight referred the case to local partner, James Ford. Included in her payments to UpRight was $335.00 for her filing fee. Ms. Dennis had meager income consisting of only $1,329.00 in Social Security and SNAP benefits (food stamps). Although she qualified for a waiver of the filing fee, UpRight did not request a waiver on her behalf.

In addition to her benefits, which are considered exempt income, Ms. Dennis had assets totaling only $2,435.00, which included a cemetery plot valued at $1,000.00, various furniture, and a Precious Moments collection. She scheduled no secured debt and listed only $7,957.00 in nonpriority, unsecured claims.

On April 15, 2019, the Court conducted a status hearing to consider the Disclosure of Compensation of Attorney filed in the case. The Court directed UpRight attorney James Ford to provide a written response to the Court including how time was spent, why there was a delay between final payment and filing, why a fee waiver was not requested, and why the filing of the bankruptcy case was even necessary.

Thereafter, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Ms. Dennis and attorney Ford. UpRight responded with Objections to those Motions. After a hearing on UpRight's Objections, the Court granted the U.S. Trustee's Motions. To date, UpRight has not provided the Court with the written response requested at the April 15, 2019 hearing. According to counsel for the U.S. Trustee, Ms. Dennis did not appear at her scheduled Rule 2004 examination and UpRight has provided no additional dates for her appearance.

### *19-40714: In re Schnack*

Debtors Thomas and Christy Schnack made installment payments to UpRight for attorney's fees of $1,150.00 from April 3, 2017 to August 23, 2019, a period of more than two years. Their Chapter 7 case was filed on September 21, 2019, and UpRight referred the case to local partner, James Ford. During the time that Mr. and Mrs. Schnack were making payments to UpRight for their attorney's fees, creditor Second Round Sub, LLC filed a civil lawsuit against Mr. Schnack in state court. That suit was still pending at the time of the bankruptcy filing.

Notably, the Debtors' Schedules list a $525.00 refund owed to them by UpRight. The Chapter 7 Trustee filed a no-asset report on November 5, 2019, but it is unclear whether UpRight has paid the Schnacks their refund.

On October 9, 2019, the Court conducted a status hearing to consider the Disclosure of Compensation of Attorney filed in the case. The Court directed UpRight attorney James Ford to

provide an itemization of fees. After Mr. Ford filed his Fee Statement, the U.S. Trustee filed

Motions for Rule 2004 Examinations seeking to examine Mr. and Mrs. Schnack and attorney

Ford. After a hearing on April 29, 2020 on UpRight's Objections, the Court granted the U.S.

Trustee's Motions.

The status hearing on the Disclosure of Compensation of Attorney has been continued

generally while the U.S. Trustee pursues the fee information requested by the Court. At the

September 16, 2020 hearing on UpRight's Motion to Close Case, the Court expressed the

continued need to find out why UpRight owed a refund to the Schnacks and whether that refund

had been paid. The Court also noted the need to investigate the creditor action against the

Debtors which occurred during UpRight's representation.

### *19-60222: In re Haws*

Debtor Wendell Haws paid $1,675.00 in attorney's fees to UpRight from July 10, 2018 to

April 19, 2019, a period of nearly nine months.  His Chapter 7 case was filed on June 23, 2019

and the case was referred by UpRight to local partner, James Ford. According to the Statement of

Financial Affairs, a foreclosure action was filed against Mr. Haws in 2018 but was dismissed

some time during 2019.

On August 21, 2019, the Court conducted a status hearing to consider the Disclosure of

Compensation of Attorney filed in the case. The Court directed UpRight to provide an

itemization of fees. After UpRight filed its Fee Statement, the U.S. Trustee filed Motions for

Rule 2004 Examinations seeking to examine Mr. Haws and UpRight attorney James Ford. At a

hearing on November 5, 2019 to consider UpRight's Objections, the Court granted the U.S.

Trustee's Motions.

At the September 16, 2020 hearing on UpRight's Motion to Close Case, counsel for the U.S. Trustee informed the Court that the Rule 2004 examinations of both Mr. Haws and attorney Ford have been conducted and that the U.S. Trustee is considering further action.

### *19-60349: In re Burns*

Debtors Boyce and Amanda Burns made installment payments for attorney's fees to UpRight totaling $1,585.00 from June 29, 2018 to November 29, 2018. However, their Chapter 7 case was not filed until September 21, 2019, nearly ten months after payments were completed. UpRight referred the case to local partner, James Ford.

The Statement of Financial Affairs shows that First Financial Bank filed a civil suit against the Burns in 2018. A judgment in the amount of $10,548.00 was entered in favor of First Financial Bank on February 13, 2019, months after the Debtors had paid UpRight in full. According to counsel for the U.S. Trustee, after the judgment was entered, the state court issued a Memorandum of Judgment and First Financial Bank served a Citation to Discover Assets on the Debtors, resulting in a lien on all of the Debtors' property. Further, the hearing on the Citation to Discover Assets resulted in the Debtors entering into a payment agreement with the judgment creditor.  The Debtors paid $700.00 to the judgment creditor pursuant to that agreement before their bankruptcy was ultimately filed.

Mr. and Mrs. Burns listed a $425.00 refund owed to them by UpRight on their Schedule A/B. The Chapter 7 Trustee filed a no-asset report on March 30, 2020, but it is unclear whether UpRight has paid the Burns the refund due to them.

On October 9, 2019, the Court conducted a status hearing to consider the Disclosure of Compensation of Attorney filed in the case. The Court directed UpRight to provide an itemization of fees. After UpRight filed its Fee Statement, the U.S. Trustee filed Motions for

Rule 2004 Examinations seeking to examine Mr. and Mrs. Burns and UpRight attorney James Ford to which UpRight objected. After a hearing on April 29, 2020, the Court granted the U.S. Trustee's Motions in order to permit the U.S. Trustee to investigate the matters occurring during UpRight's legal representation, as well as the refund due to the Burns from UpRight.

At the September 16, 2020 hearing on UpRight's Motion to Close Case, the Court reiterated its concerns, emphasizing in particular the creditor collection actions that took place during UpRight's representation and the unknown status of the refund due to the Burns from UpRight.

### *20-40036: In re Corey*

Debtor Betty Corey made payments to UpRight for attorney's fees of $1,150.00 and a filing fee of $335.00 from January 24, 2019 to October 17, 2019, a period of nearly ten months. Her Chapter 7 case was then filed on January 18, 2020. UpRight referred the case to local partner, James Ford.

Ms. Corey's Statement of Financial Affairs shows that in the year prior to her bankruptcy filing, two lawsuits against her were pending in Indiana. The Fee Statement filed by UpRight in this case does not reveal any assistance provided to Ms. Corey with regard to these lawsuits. The Statement of Financial Affairs further shows that after Ms. Corey had completed her payments to UpRight and was waiting for her bankruptcy to be filed, she paid an unsecured creditor, Americash Loans, a total of $847.92.

On March 11, 2020, the Court conducted a status hearing to consider the Disclosure of Compensation of Attorney filed in the case. The Court directed UpRight to provide an itemization of fees. The U.S. Trustee subsequently filed Motions for Rule 2004 Examinations seeking to examine Ms. Corey and UpRight attorney James Ford. UpRight then filed its Fee

Statement as well as objections to the U.S. Trustee's Motions for 2004 Examinations. After a hearing on April 29, 2020 to consider UpRight's Objections, the Court granted the U.S. Trustee's Motions.

At the September 16, 2020 hearing on UpRight's Motion to Close Case, the Court expressed its continued concern regarding the delay in Ms. Corey's bankruptcy filing and the creditor actions that took place during that time.

### 20-40166: In re Hill

Debtor Brandi Hill paid UpRight $1,050.00 in attorney's fees from March 18, 2019 to October 11, 2019, a period of nearly seven months. Her Chapter 7 case, however, was not filed until March 11, 2020, approximately one year after retaining UpRight.  UpRight referred the case to local partner, James Ford.  In addition to the attorney's fees, Ms. Hill also paid UpRight $335.00 for her filing fee. Although Ms. Hill qualified for a waiver of the filing fee, UpRight did not seek a waiver on her behalf. In her bankruptcy schedules, Ms. Hill, a single mother of two, listed only $3,541.00 in assets, including $1,225.00 in household items, a 401(k) valued at $1,255.00, and $900.00 in unpaid wages.

On April 7, 2020, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Ms. Hill and UpRight attorney James Ford. UpRight followed with objections. On April 29, 2020, the Court conducted a status hearing to consider the Disclosure of Compensation of Attorney filed in the case. The Court directed attorney Ford to provide an itemization of fees and expenses within thirty (30) days. At that hearing, the Court also considered UpRight's objections to the Motions for Rule 2004 Examinations.  The Motions were granted over UpRight's objections.

14

At the September 16, 2020 hearing on UpRight's Motion to Close Case, the Court expressed its continued concern regarding the delay in the bankruptcy filing, why a fee waiver was not sought, and why the filing of the bankruptcy case was necessary.

### 20-40179: In re Lindsey

Debtors Andrea and Jason Lindsey paid $1,150.00 in attorney's fees to Upright from September 10, 2019 to October 28, 2019. However, their Chapter 7 case was not filed until March 14, 2020. The Lindseys also paid UpRight a $335.00 filing fee, despite the fact that they qualified for a fee waiver.  UpRight did not seek a waiver on their behalf.

On April 7, 2020, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Mr. and Mrs. Lindsey and UpRight attorney James Ford, the local attorney to whom the case had been referred. UpRight responded with objections. On April 29, 2020, the Court granted the U.S. Trustee's Motions over UpRight's objection.  The Court also conducted a status hearing at that time regarding attorney Ford's Disclosure of Attorney Compensation. The Court directed attorney Ford to provide an itemization of fees and expenses within thirty (30) days. That Fee Statement was filed on May 29, 2020.

### 20-40199: In re Bond

Debtor Cullen Bond paid $1,250.00 in attorney's fees to UpRight from August 28, 2019 to September 17, 2019. His Chapter 7 case was filed on March 20, 2020, six months later. Mr. Bond also paid UpRight $335.00 for a filing fee. At the time that the bankruptcy petition was filed, Mr. Bond was unemployed and had no income. He therefore qualified for a waiver of the filing fee; however, UpRight did not request a waiver on his behalf.

Mr. Bond's Statement of Financial Affairs shows that his vehicle was repossessed by a creditor on October 1, 2019, after Mr. Bond had completed his payments to UpRight. At the time of the bankruptcy filing, the same creditor had an action pending against Mr. Bond in Georgia.

On April 7, 2020, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Mr. Bond and UpRight attorney James Ford, the local partner to whom the case was referred. UpRight followed with objections. At hearing on April 29, 2020, the Court granted the U.S. Trustee's Motions over UpRight's objections.  It also conducted a status hearing on attorney Ford's Disclosure of Attorney Compensation. The Court directed attorney Ford to provide an itemization of fees and expenses within thirty (30) days. That Fee Statement was filed on May 29, 2020.

At the September 16, 2020 hearing on UpRight's Motion to Close Case, the Court expressed its continued concern regarding the reasonableness of UpRight's fees in light of the creditor collection actions that occurred during UpRight's representation, and UpRight's failure to file a fee waiver.

### *20-60035: In re Smiley*

Debtor John Smiley paid UpRight $1,375.00 in attorney's fees between January 4, 2018 and May 20, 2019, a period of more than sixteen months. His Chapter 7 case was not filed for nearly nine months, on February 8, 2020. UpRight referred the case to local partner, James Ford.

In addition to the attorney's fees, Mr. Smiley also paid UpRight a $335.00 filing fee. His only income was unemployment of $784.00 per month, qualifying him for a waiver of the filing fee. However, UpRight did not request a waiver on Mr. Smiley's behalf.

On March 11, 2020, the Court conducted a status hearing to consider the Disclosure of Compensation of Attorney filed in the case. The Court directed UpRight to provide an itemization of fees. The U.S. Trustee subsequently filed Motions for Rule 2004 Examinations seeking to examine Mr. Smiley and UpRight attorney James Ford. UpRight then filed its Fee Statement, as well as Objections to the United States Trustee's Motions for 2004 Examinations. After a hearing on April 29, 2020 to consider UpRight's Objections, the Court granted the U.S. Trustee's Motions for Rule 2004 Examinations. The Fee Statement filed by UpRight reflects that Mr. Smiley only met with an attorney once in person, when he met with attorney Ford on February 8, 2020, the date that the bankruptcy was filed. The Fee Statement also reveals that Mr. Smiley requested cancellation of his representation by UpRight four times. The conversations regarding cancellation and the subsequent reopening occurred with Non-attorney staff each time.

At the September 16, 2020 hearing on UpRight's Motion to Close Case, the Court expressed its continued concern regarding the reasonableness of UpRight's fees in light of the considerable delay in getting the case filed and the failure to request a fee waiver, and reiterated the need for a justification for fees in an amount significantly higher than attorney Ford usually charges.

### *20-30103: In re Thulin*

Jeffrey and Julie Thulin paid $1,725.00 in attorney's fees to UpRight from December 19, 2018 to April 12, 2019. Their Chapter 7 case was filed more than nine months later on January 31, 2020. UpRight referred the case to local partner, Ronald Buch.

According to the Thulins' Statement of Financial Affairs, during the time that they were represented by UpRight, the Thulins were subjected to a post-judgment collection proceeding in state court and had wages garnished in the amount of $737.36.

On October 1, 2020, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Mr. and Mrs. Thulin and UpRight attorney Ronald Buch. After a hearing on UpRight's objection to those Motions, the Court granted the Motions.

At the September 16, 2020 hearing on UpRight's Motion to Close Case, the Court expressed its concern regarding the reasonableness of UpRight's fees in light of the wage garnishment which occurred during UpRight's representation, as well as the need for a justification for fees in an amount significantly higher than attorney Buch usually charges.

### 19-30157: In re Scott

Debtor Kerri Scott paid $1,675.00 in attorney's fees to UpRight from April 4, 2018 to December 19, 2018, a period of more than eight months. Her Chapter 7 case was filed on February 15, 2019. UpRight referred the case to local partner, Ronald Buch.

On September 19, 2019, the Court conducted a status hearing to consider the Disclosure of Compensation of Attorney filed in the case. That matter was continued generally and at the September 16, 2020 hearing on UpRight's Motion to Close Case, the Court directed UpRight attorney Ronald Buch to provide an itemization of fees within thirty (30) days.

On September 26, 2019, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Ms. Scott and attorney Buch. After a hearing on UpRight's objection to those Motions, the Court granted the Motions. At the September 16, 2020 hearing on UpRight's Motion to Close Case, counsel for the U.S. Trustee advised the Court that the COVID pandemic had delayed the Rule 2004 examinations, but counsel and attorney Buch were working to get the examinations conducted in a safe manner.

### 19-30720: In re Clark

Debtors Marc and Kelly Clark paid $1,775.00 in attorney's fees to UpRight from May 3, 2019 to May 15, 2019. Their Chapter 7 case was filed on May 29, 2019. UpRight referred the case to local partner, Ronald Buch. The Clarks also paid a filing fee of $335.00 despite the fact that their income for a family of four qualified them for a fee waiver. UpRight did not file a waiver on their behalf.

On June 18, 2019, the Court conducted a status hearing to consider the Disclosure of Compensation of Attorney filed in the case. UpRight attorney Ronald Buch was directed to file an itemized fee statement within forty-five (45) days. On August 2, 2019, attorney Buch, by his counsel Mark T. Lavery of UpRight, filed the Fee Statement along with a Supplemental Memorandum.

On September 27, 2019, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Mr. and Mrs. Clark and attorney Buch. After a hearing on UpRight's objections to those Motions, the Court granted the Motions. At the September 16, 2020 hearing on UpRight's Motion to Close Case, counsel for the U.S. Trustee advised the Court that depending upon availability of the parties, the Rule 2004 examinations could be conducted within two or three days.

### *19-30856: In re Mounce*

Debtor Ariel Mounce paid $1,675.00 in attorney's fees to UpRight from August 1, 2018 to March 29, 2019, a period of eight months. Her Chapter 7 case was then filed on June 26, 2019. Ms. Mounce also paid a filing fee of $335.00. According to Schedule I, Ms. Mounce, a single mother with four children, would have qualified for a waiver of her filing fee. Yet, UpRight did not file a waiver on her behalf.

On October 1, 2019 the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Ms. Mounce and UpRight attorney Ronald Buch, the local partner to whom the case had been referred. After a hearing on UpRight's objections to those Motions, the Court granted the Motions. At the September 16, 2020 hearing on UpRight's Motion to Close Case, counsel for the U.S. Trustee advised the Court that he had received documents pursuant to the Rule 2004 examination request, but that the examinations had not yet been conducted. The Court directed the parties to move as expeditiously as possible to get the examinations taken and the case moving forward.

### *19-30905: In re Lalumondiere*

Harold and Lisa Lalumondiere paid $1,725.00 in attorney fees to UpRight from August 31, 2018 to February 22, 2019, a period of nearly six months. Their Chapter 7 case not filed until July 3, 2019.  UpRight referred the case to local partner, Ronald Buch.

On September 26, 2019, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Mr. and Mrs. Lalumondiere and UpRight attorney Ronald Buch. After a hearing on UpRight's objections to those Motions, the Court granted the Motions. At the September 16, 2020 hearing on UpRight's Motion to Close Case, the Court directed attorney Buch to submit an itemized fee statement within thirty (30) days. Counsel for the U.S. Trustee advised the Court that once he received the Fee Statement, he would conduct the Rule 2004 examinations.

### *19-30993: In re Turner*

 Debtor Jason Turner paid $1,675.00 in attorney fees to UpRight from December 15, 2017 to April 18, 2019, a period of more than sixteen months. His Chapter 7 case was filed on July 26, 2019. UpRight referred the case to local partner, Ronald Buch.

Mr. Turner's Statement of Financial Affairs shows that during the time that he was represented by UpRight, he was subjected to small claims lawsuits filed by Brother Loan and Finance Co. and Crystal Rock Finance LLC. Both creditors obtained judgments against Mr. Turner in 2019. Mr. Turner's assets totaled $5,565.35 and included a 2007 Chevrolet Impala valued at $3,775.00.

On September 26, 2019, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Mr. Turner and UpRight attorney Ronald Buch. After a hearing on UpRight's objections to those Motions, the Court granted the Motions. At the September 16, 2020 hearing on UpRight's Motion to Close Case, the Court directed attorney Buch to submit an itemized fee statement within thirty (30) days. The Court noted that creditor actions occurred during the time that Mr. Turner waited for his bankruptcy to be filed. The Court further expressed its concern that the fee charged by UpRight was higher than the fee usually charged by attorney Buch and questioned what value was added by attorney Buch's affiliation with UpRight.

### *19-31097: In re Lankford*

Debtor Donald Lankford paid $1,375.00 in attorney fees to UpRight from June 14, 2018 to November 9, 2018. His Chapter 7 case was not filed for another nine months on August 15, 2019. UpRight referred the case to local partner, Ronald Buch.

According to Mr. Lankford's Statement of Financial Affairs, while Mr. Lankford waited for his bankruptcy to be filed, he was subjected to three creditor lawsuits. One of those actions resulted in a judgment against Mr. Lankford and two of the suits were still pending at the time of the bankruptcy filing.

On September 26, 2019, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Mr. Lankford and UpRight attorney Ronald Buch. After a hearing on

UpRight's objection to those Motions, the Court granted the Motions. At the September 16, 2020 hearing on UpRight's Motion to Close Case, counsel for the U.S. Trustee advised the Court that the Rule 2004 examinations had not yet been conducted.

### 19-31273: In re Beckemeyer

Debtor Megan Beckemeyer paid UpRight $1,675.00 in attorney's fees from September 14, 2018 to May 3, 2019, a period of nearly eight months. Her Chapter 7 case was not filed until September 20, 2019, one year after first retaining UpRight. UpRight referred the case to local partner, Ronald Buch.

On November 5, 2019, the Court conducted a status hearing to consider the Disclosure of Compensation of Attorney filed in the case. The Court directed UpRight attorney Ronald Buch to file an itemized fee statement within thirty (30) days. On December 12, 2019, after having been granted an extension of time, UpRight filed the required Fee Statement.

On September 17, 2020, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Ms. Beckemeyer and attorney Buch. A hearing was conducted on UpRight's objection to those Motions on October 20, 2020. At the hearing, the U.S. Trustee indicated on the record that the Fee Statement provided by UpRight showed that Ms. Beckemeyer did not meet with an attorney from UpRight until eight months after retaining UpRight. It does not appear that any legal services were rendered during that period, despite Debtor making payments to UpRight. In granting the Motions for Rule 2004 Examinations, the Court noted that the record before it showed significant gaps in the Debtor's representation by UpRight. Further, it appeared that the Debtor's initial contact with UpRight was with a non-attorney. The Debtor chose to file Chapter 7 and began making payments toward UpRight's attorney's fees based solely on correspondence with non-attorney staff and before ever being contacted by an attorney.

### *19-31377: In re Miller*

Debtor David Miller paid $1,525.00 in attorney's fees to UpRight from August 2, 2019 to August 16, 2019. His Chapter 7 case was filed on October 9, 2019. UpRight referred the case to local partner, Ronald Buch. Mr. Miller's Statement of Financial Affairs shows that in the (90) ninety days prior to his bankruptcy filing, Mr. Miller paid a total of $3,725.37 to three unsecured creditors.

On November 5, 2019, the Court conducted a status hearing to consider the Disclosure of Compensation of Attorney filed in the case. UpRight attorney Ronald Buch was directed to file an itemized fee statement within 30 days. On December 12, 2019, having been granted an extension of time, UpRight filed the Fee Statement.

On April 7, 2020, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Mr. Miller and attorney Buch. After a hearing on UpRight's objection to those Motions, the Court granted the Motions. At the September 16, 2020 hearing on UpRight's Motion to Close Case, counsel for the U.S. Trustee advised the Court that documentation had been produced in response to the Motions for Rule 2004 Examinations, but that the examinations had not yet been conducted.

### *19-31474: In re Brucker*

Debtors Jamie and Angela Brucker paid $1,725.00 in attorney's fees to UpRight from July 6, 2018 to February 28, 2019, a period of more than seven months. Their Chapter 7 case was not filed for another nine months on October 30, 2019. UpRight referred the case to local partner, Ronald Buch.

The Bruckers' Statement of Financial Affairs shows that during the year prior to the bankruptcy filing, while the Bruckers were represented by UpRight, creditors took collection

actions against them. One creditor, Kathy Oliver, obtained a judgment in a small claims suit filed in 2018 and garnished Mr. Brucker's wages in the amount of $1,291.37. Another creditor, Prestige Financial Services, repossessed property belonging to the Bruckers valued at $2,343.32.

The Fee Statement filed by UpRight reflects that non-attorney UpRight staff members were advising the Bruckers regarding creditor collection efforts prior to the bankruptcy filing. In particular, on February 12, 2019, staff member Marty Labelle logged a six-minute call described as "Phone conversation with client regarding garnishment."

On April 7, 2020, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Mr. and Mrs. Brucker and UpRight attorney Ronald Buch. After a hearing on UpRight's objection to those Motions, the Court granted the Motions. At the September 16, 2020 hearing on UpRight's Motion to Close Case, the Court expressed its concern that non-attorney staff members at UpRight were advising the Bruckers regarding the creditor collections. Counsel for the U.S. Trustee informed the Court that the Rule 2004 examinations were scheduled for October 6, 2020 via video conference.

### *19-31476: In re Edwards*

Debtors Arnold and Tracy Edwards paid $1,575.00 in attorney's fees to UpRight from June 21, 2019 to August 23, 2019. Their Chapter 7 case was filed on October 30, 2019. The Edwards also paid a filing fee of $335.00 despite the fact that their income for a family of six qualified them for a fee waiver. UpRight did not request a waiver on their behalf. The Debtors' assets totaled $4,429.02 and were exempt from creditors.

On January 28, 2020, the Court conducted a status hearing to consider the Disclosure of Compensation of Attorney filed in the case by attorney Ron Buch, the local partner to whom the

case was referred. UpRight was directed to file an itemized fee statement within thirty (30) days. On February 27, 2020, UpRight filed its Fee Statement.

The Fee Statement reflects that non-attorney UpRight staff members were advising the Edwards regarding creditor garnishment efforts prior to the bankruptcy filing. In particular, on June 3, 2019, non-attorney staff members Josiah Lape and Marty Labelle each logged six-minute conversations with the Debtors described as "Phone conversation with client regarding general questions" and "Phone conversation with client regarding potential garnishment." On August 9, 2019, non-attorney staff member, Adrianna Boney, logged a six-minute conversation described as "Phone conversation with client regarding garnishment."

On April 7, 2020, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Mr. and Mrs. Edwards and UpRight attorney Buch. After a hearing on UpRight's objection to those Motions, the Court granted the Motions.

At the September 16, 2020 hearing on UpRight's Motion to Close Case, the Court expressed its concern that non-attorney staff members at UpRight were advising the Edwards regarding creditor collection and garnishment efforts. Counsel for the U.S. Trustee advised the Court that the documents requested for the Rule 2004 examinations had been produced on September 11, 2020 and that the examinations would be scheduled soon.

### 19-31537: In re Hohensee

Debtor Rachael Hohensee paid $1,475.00 in attorney's fees to UpRight from January 23, 2019 to September 4, 2019, a period of more than seven months.  Her Chapter 7 case was filed on November 13, 2019. UpRight referred the case to local partner, Ronald Buch.

Ms. Hohensee's Statement of Financial Affairs shows that in April 2019, during the time period that Ms. Hohensee was making payments to UpRight, creditor Heights Finance

repossessed her Chevy Avalanche. Heights Finance further took a state court judgment against Ms. Hohensee prior to her bankruptcy filing.

On January 28, 2020, the Court conducted a status hearing to consider the Disclosure of Compensation of Attorney filed in the case. UpRight was directed to file an itemized fee statement within thirty (30) days. On February 27, 2020, UpRight filed the Fee Statement. The Fee Statement does not reveal any legal assistance to Ms. Hohensee relating to the collection actions taken against her. However, the Fee Statement does reflect that on May 30, 2019, Ms. Hohensee made a cancellation request to an UpRight staff member.

On April 7, 2020, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Ms. Hohensee and UpRight attorney Ronald Buch. After a hearing on UpRight's objection to those Motions, the Court granted the Motions.

At the September 16, 2020 hearing on UpRight's Motion to Close Case, counsel for the U.S. Trustee advised the Court that the documents requested for the Rule 2004 examinations were produced on September 10, 2020 and that the examinations would be scheduled soon.

### *19-31596: In re Cannon*

Debtor Tiffany Cannon paid $1,675.00 in attorney's fees to UpRight from August 23, 2018 to February 22, 2019, a period of six months. Her Chapter 7 case was not filed for another nine months on November 26, 2019. Ms. Cannon also paid a filing fee of $335.00. Her Schedule I shows that her monthly income consisted of $232.42, along with SNAP benefits of $299.00, which qualified her for a filing fee waiver, although UpRight did not request a waiver on her behalf. UpRight referred the case to local partner, Ronald Buch.

Ms. Cannon's Statement of Financial Affairs shows that during the time she was making payments to UpRight, a state court judgment was entered against her in the amount of $3,415.58.

The Statement of Financial Affairs also shows that after Ms. Cannon had completed her payments and was waiting for her bankruptcy to be filed, her 2014 Ford Focus was repossessed.

On January 28, 2020, the Court conducted a status hearing to consider the Disclosure of Compensation of Attorney filed in the case. UpRight was directed to file an itemized fee statement within 30 days. On February 27, 2020, UpRight filed the Fee Statement.

On April 7, 2020, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Ms. Cannon and UpRight attorney Ronald Buch. After a hearing on UpRight's Objection to those Motions, the Court granted the Motions.

At the September 16, 2020 hearing on UpRight's Motion to Close Case, the Court expressed its grave concerns about the facts revealed in this case, including the lack of filing fee waiver, the delay in the filing, and the creditor collection actions during UpRight's representation. At the September 16, 2020 hearing, counsel for the U.S. Trustee informed the Court that the documents requested for the Rule 2004 examinations were produced on September 10, 2020. Counsel advised the Court that he hoped to get the examinations scheduled.

### _19-60152: In re VanDeventer_

Debtors Ross and Mary VanDeventer paid $1,200.00 in attorney's fees to UpRight from August 14, 2018 to February 22, 2019, a period of more than six months. Their Chapter 7 case was filed on April 24, 2019. The VanDeventers also paid a $335.00 filing fee. Schedule I shows that the monthly income for the VanDeventers and their disabled daughter was only $2,340.63, which qualified them for a filing fee waiver. However, UpRight did not request a fee waiver on their behalf. The case was originally referred to local UpRight partner, Michael Curry, but was reassigned to UpRight partner, Ronald Buch.

On September 26, 2019, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Mr. and Mrs. VanDeventer and UpRight attorney Ronald Buch. After a hearing on UpRight's Objection to those Motions, the Court granted the Motions.

At the September 16, 2020 hearing on UpRight's Motion to Close Case, counsel for the U.S. Trustee informed the Court that the documents requested for the Rule 2004 examinations had been produced and that the U.S. Trustee intends to take the Rule 2004 examinations.

### *19-60320: In re Johnson*

Debtor Albert Johnson paid $1,775.00 in attorney's fees to UpRight from August 22, 2018 to March 8, 2019, a period of more than six months. His Chapter 7 case was not filed for nearly six more months on August 30, 2019. Mr. Johnson also paid a $335.00 filing fee although he was unemployed with $0.00 income at the time of the bankruptcy filing. Although Mr. Johnson qualified for a filing fee waiver, UpRight did not request a waiver on his behalf. UpRight referred the case to local partner, Ronald Buch.

During the time that Mr. Johnson was represented by UpRight, he was subjected to two creditor lawsuits in state court. Heights Finance obtained a judgment against Mr. Johnson and garnished his wages. Additionally, Brokers Solutions pursued a foreclosure action against Mr. Johnson which was still pending at the time of the bankruptcy filing.

On September 26, 2019, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Mr. Johnson and UpRight attorney Ronald Buch. After a hearing on UpRight's Objection to those Motions, the Court granted the Motions.

At the September 16, 2020 hearing on UpRight's Motion to Close, the Court expressed its concern regarding the delay in the bankruptcy filing during which time Mr. Johnson was subjected to creditor collection suits and garnishment, and the fact that a fee waiver was not filed

for Mr. Johnson. Counsel for the U.S. Trustee informed the Court that the Rule 2004 examinations of Mr. Johnson and attorney Buch had taken place, but that the U.S. Trustee had not conducted the examination of UpRight's chief operating officer.

### *20-30177: In re Chapman*

Debtor Peggy Chapman paid $1,675.00 in attorney's fees to UpRight from February 8, 2019 to January 13, 2020, a period of nearly one year. Her Chapter 7 case was filed February 24, 2020. Ms. Chapman's Statement of Financial Affairs shows that during the year prior to filing, three creditors had collection suits pending against Ms. Chapman, and two of those actions resulted in judgments against her. UpRight referred the case to local partner, Ronald Buch.

On April 7, 2020, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Ms. Chapman and UpRight attorney Ronald Buch. At the hearing on UpRight's Objections to those Motions, counsel for the U.S. Trustee informed the Court that on January 8, 2020, just days before Ms. Chapman completed her installment payments to UpRight, she filed a motion to vacate one of the state court judgments and paid $189.00 to the state court clerk to do so. In its Order granting the Motions for Rule 2004 Examinations, the Court expressed its concern regarding the delay in Ms. Chapman's bankruptcy filing and the fact that Ms. Chapman was required to use her limited income to vacate a state court judgment when she had already contracted with UpRight for a bankruptcy filing which would eliminate that debt.

The Court further reiterated those concerns at the September 16, 2020 hearing on UpRight's Motion to Close Case. At that hearing, counsel for the U.S. Trustee informed the Court that he and attorney Buch were working through the logistics of setting up the Rule 2004 examinations.

### *20-30186: In re McClatchery*

Debtor Angie McClatchery paid $1,050.00 in attorney's fees to UpRight from July 15, 2019 to December 31, 2019, a period of more than five months. Her Chapter 7 case was filed on February 26, 2020. UpRight referred the case to local partner, Ronald Buch.

Ms. McClatchery's Statement of Financial Affairs reflects that during the year prior to her bankruptcy filing, Ms. McClatchery was the subject of several creditor lawsuits, and confirms that while she was represented by UpRight her wages were being garnished by one of those creditors and another creditor repossessed her vehicle.

On April 7, 2020, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Ms. McClatchery and UpRight attorney Ronald Buch. In its Order granting the Motions for Rule 2004 Examinations, the Court expressed its concern regarding the delay in Ms. McClatchery's bankruptcy filing and the creditor collection efforts which Ms. McClatchery faced during her representation by Upright.

At the September 16, 2020 hearing on UpRight's Motion to Close Case, counsel for the U.S. Trustee informed the Court that the documents requested for the Rule 2004 examinations were produced on September 11, 2020 and that the U.S. Trustee intends to schedule the Rule 2004 examinations.

### _20-30203: In re Scruggs_

Debtors Shaune and Micah Scruggs paid $1,775.00 in attorney's fees to UpRight from April 16, 2019 to July 26, 2019. Their Chapter 7 case was not filed for another seven months on February 28, 2020. UpRight referred the case to local partner, Ronald Buch.

The Fee Statement filed by UpRight shows that on April 17, 2019, the Debtors received a six-minute "compliance call" from attorney Buch. The Debtors did not speak to attorney Buch

again until they met him on September 10, 2019, nearly five months later. Their next contact

with an attorney was another five months later on February 27, 2020, the day before the

bankruptcy filing.

On April 7, 2020, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to

examine the Debtors and UpRight attorney Ronald Buch. In its Order granting the Motions for

Rule 2004 Examinations, the Court expressed its concern regarding the delay in the bankruptcy

filing and the fact that the Scruggs only received one six-minute phone call from an UpRight

attorney during the first five months of representation.

The Court reiterated those concerns at the September 16, 2020 hearing on UpRight's

Motion to Close Case. At that hearing, counsel for the United States Trustee informed the Court

that he had received the documents relating to the Rule 2004 examinations and would proceed

with those examinations.

### _19-30087: In re Dedmon_

Debtors Terry Dedmon and Khristie Gable paid attorney's fees of $1,725.00 to UpRight

between July 5, 2018 and October 23, 2018. Their Chapter 7 case was filed on January 30, 2019.

UpRight referred the case to local partner, Ronald Buch.

On September 26, 2019, the U.S. Trustee filed Motions for Rule 2004 Examinations

seeking to examine Mr. Dedmon and Ms. Gable, and UpRight attorney Ronald Buch. After a

hearing on UpRight's Objection to those Motions, the Court granted the Motions.

At the September 16, 2020 hearing on UpRight's Motion to Close Case, the Court

expressed concern that the attorney fee charged by UpRight was much higher than the rate

normally charged by attorney Buch, and noted that a Fee Statement had not yet been filed in the

case. The Court directed UpRight to file that statement within thirty (30) days. Counsel for the

U.S. Trustee advised the Court that the documents requested for the Rule 2004 examinations had been produced and that he intended to conduct the examinations.

### 19-31602: In re Jones

Debtors Clint and Pamela Jones paid UpRight attorney's fees of $1,725.00 between February 15, 2019 and August 30, 2019, a period of more than six months. Their Chapter 7 case was filed on November 26, 2019. UpRight referred the case to local partner, Ronald Buch.

The Statements of Financial Affairs shows that Debtors made a $200.00 payment to Anita Smith on August 2019, during the course of their representation by UpRight. The Statement of Financial Affairs also indicates that during the year prior to filing, the Debtors' 2015 Nissan Versa Note was repossessed.

On April 7, 2020, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Mr. and Mrs. Jones and UpRight attorney Ronald Buch. In its Order granting the Motions for Rule 2004 Examinations, the Court expressed its concern regarding the delay in the bankruptcy filing and the fact that Mr. and Mrs. Jones only received one six-minute phone call from an UpRight attorney during the first seven months of representation.

At the September 16, 2020 hearing on UpRight's Motion to Close Case, counsel for the U.S. Trustee informed the Court that the documents requested for the Rule 2004 examinations had not yet been produced. Therefore, the Rule 2004 examinations have not yet been taken.

### 19-60357: In re Reynolds

Debtor Teresa Reynolds paid $1,675.00 in attorney's fees to UpRight from July 12, 2018 to May 3, 2019, a period of nearly ten months. Her Chapter 7 case was not filed until September 26, 2019. During the time that Ms. Reynolds waited for her bankruptcy to be filed, her mobile home was repossessed. UpRight referred the case to local partner, Ronald Buch.

Ms. Reynolds also paid a filing fee of $335.00 despite the fact that her monthly income, consisting of unemployment and SNAP benefits (food stamps), was only $806.00. Although she qualified for a filing fee waiver, UpRight did not request a waiver on her behalf.

On April 7, 2020, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Ms. Reynolds and UpRight attorney Ronald Buch. In its Order granting the Motions for Rule 2004 Examinations, the Court expressed its concern regarding a host of issues in the case, including the delay in the bankruptcy filing and the repossession during that time, the additional fees charged due to attorney Buch's association with UpRight, and the failure of UpRight to request a filing fee waiver.

The Court reiterated those concerns at the September 16, 2020 hearing on UpRight's Motion to Close Case. At that hearing, counsel for the U.S. Trustee informed the Court that he was awaiting production of the documents relating to the Rule 2004 examinations.

### *20-30346: In re Wise*

Mr. Wise paid $1,675.00 in attorney's fees to UpRight from October 9, 2018 to October 15, 2018. His Chapter 7 case was not filed for another seventeen months on March 27, 2020. UpRight referred the case to local partner, Ronald Buch. After Mr. Wise had completed his payments to UpRight and was waiting for his bankruptcy to be filed, he was the subject of two creditor collection suits. One lawsuit concluded in a judgment against him and the other was still pending at the time of the bankruptcy filing.

Mr. Wise also paid UpRight $335.00 for his filing fee. Although Mr. Wise had monthly income of only $1,202.64 and qualified for a waiver of the filing fee, UpRight did not request a waiver on his behalf.

On April 30, 2020, the Court conducted a status hearing to consider the Disclosure of Compensation of Attorney filed in the case. The Court directed UpRight to provide an itemization of fees within thirty (30) days. UpRight filed its Fee Statement on May 29, 2020, and on August 12, 2020 the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Mr. Wise and UpRight attorney Ronald Buch. The Court granted the United States Trustee's Motions for Rule 2004 Examinations by Order entered September 17, 2020.

At the September 16, 2020 hearing on UpRight's Motion to Close Case, the Court expressed its concern regarding the extended delay in the bankruptcy filing during which time Mr. Wise was subjected to creditor collection lawsuits. The Court noted that the Motions for Rule 2004 Examination were still under advisement at that time.

### 20-40187: In re Crow

Debtors Annette and Charles Crow paid attorney's fees of $1,150.00 and a $335.00 filing fee to UpRight from August 5, 2019 to November 1, 2019. Their Chapter 7 case was filed on March 17, 2020. UpRight referred the case to local partner, James Ford.

The Crows' Schedule I shows that the Crows' monthly income was only $1,632.00 and was comprised of Social Security and SNAP benefits (food stamps). Although the Crows qualified for a waiver of the filing fee, UpRight did not request a waiver on their behalf.

On April 7, 2020, the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Mr. and Mrs. Crow and UpRight attorney James Ford. After a hearing on UpRight's Objection to those Motions, the Court granted the Motions.

At the September 16, 2020 hearing on UpRight's Motion to Close Case, counsel for the United States Trustee advised the Court that he was awaiting production of documents from UpRight relating to the Rule 2004 Examinations.

34

***20-40288: In re Kulik***

Debtor Daryl Kulik paid $1,050.00 in attorney's fees and a $335.00 filing fee to UpRight from August 13, 2019 to February 19, 2020, a period of more than six months. His Chapter 7 case was filed on May 1, 2020. During the time that Mr. Kulik was represented by UpRight, his Social Security benefits were garnished by the Department of Veterans Affairs. UpRight referred the case to local partner, James Ford.

On June 10, 2020, the Court conducted a status hearing to consider the Disclosure of Compensation of Attorney filed in the case. The Court directed UpRight to provide an itemization of fees within thirty (30) days. UpRight filed its Fee Statement on July 10, 2020, and on August 12, 2020 the U.S. Trustee filed Motions for Rule 2004 Examinations seeking to examine Mr. Kulik and UpRight attorney James Ford. The Court granted the United States Trustee's Motions for Rule 2004 Examinations by Order entered September 14, 2020. In its Order, the Court expressed concern that Debtor only spoke with an attorney once during the first 197 days of UpRight's legal representation, when he received his "compliance call" from attorney Ford. The Court further noted that Mr. Kulik was subjected to a garnishment during UpRight's representation.

At the September 16, 2020 hearing on UpRight's Motion to Close Case, the Court reiterated its concern that Mr. Kulik's Social Security benefits had been garnished during UpRight's representation. The Court noted that the Order granting the Motions for Rule 2004 Examination had just been entered and, therefore, the examinations had not yet taken place.

## DISCUSSION

UpRight's Motions to Close Case seek to close each of the above-referenced cases pursuant to 11 U.S.C § 350(a) and Federal Rule of Bankruptcy Procedure 5009. Additionally,

UpRight Law argues that the Court's treatment of it and its partners in this and other pending cases violates the Fifth Amendment's equal protection and due process clauses.

## I.     **The Court is Not Required to Close the Cases At This Time**

Section 350 of the Bankruptcy Code provides, in part: "After an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Accordingly, there are two prerequisites for the closure of a case: (1) full administration of the estate; and (2) discharge of the trustee.

### A. **Full Administration**

The first prerequisite of case closure is "full administration." "A definition for 'fully administered' does not appear anywhere in the Code or the Rules." *In re Shotkoski,* 420 B.R. 479, 483 (B.A.P. 8th Cir. 2009).  Instead, the determination of whether a bankruptcy estate has been "fully administered" is within a bankruptcy court's discretion. *Id.*  Some guidance, however, is provided by Federal Rule of Bankruptcy Procedure 5009 which states:

> If in a chapter 7, chapter 12, or chapter 13 case the trustee has filed a final report and final account and has certified that the estate has been fully administered, and if within 30 days no objection has been filed by the United States trustee or a party in interest, there shall be a presumption that the estate has been fully administered.

Fed. R. Bankr. 5009.

In each of the cases before the Court, the Chapter 7 trustee has filed his Final Report and there were no objections. Therefore, according to Rule 5009, the estate is *presumed* to be fully administered. However, as the legislative history of Rule 5009 reveals, its provisions are merely permissive.  The 1991 Advisory Committee Note to Rule 5009 states:

> The final report and account of the trustee is required to be filed with the court and the United States trustee under §§704(9), 1202(b)(1), and 1302(b)(1) of the Code. This amendment facilitates the United States trustee's performance of statutory duties to supervise trustees and administer cases under chapters 7, 12,

> and 13 pursuant to 28 U.S.C. §586. In the absence of a timely objection by the United States trustee or a party in interest, the court **may** discharge the trustee and close the case pursuant to §350(a) without the need to review the final report and account or to determine the merits of the trustee's certification that the estate has been fully administered (emphasis added).

Fed. R. Bankr. 5009 advisory committee's note to 1991 amendment.

Rather than conferring some type of right upon the Debtor as to when their case must be closed, Rule 5009 is administerial in nature.  As Bankruptcy Judge Stan Bernstein of the Eastern District of New York explained in *In re Schoenewerk*, Rule 5009 serves the bureaucratic function of eliminating the need for the U.S. Trustee to prepare a report advising the bankruptcy clerk that a case may be closed. It should not be construed as granting any substantive right or interest to the debtor in any property that comes into the estate upon the filing of a petition by operation of law. *In re Schoenewerk*, 304 B.R. 59, 62–63 (Bankr. E.D.N.Y. 2003).  Therefore, the purpose of the final report is to establish a presumption of full administration of the estate, and once said presumption arises, the case is *capable* of being closed (emphasis added). *In re Kelco Metals, Inc.,* 532 B.R. 912, 923 (Bankr.N.D.Ill. 2015).  It does not mean that the case *must* be closed.

Because the final reports have been filed without objection, each of the above-captioned cases is *capable* of being closed at this time and *may* be closed once the Bankruptcy Court has made the determination that the estate has been fully administered. However, the U.S. Trustee is currently in the process of investigating UpRight, through 2004 Examinations, in order to fully determine the scope of UpRight's representation during the period prior to the bankruptcy filings, as well as the effect of that representation (or lack thereof) on the Debtors' liabilities, property and the bankruptcy estate. Specifically, the U.S. Trustee is in the midst of conducting 2004 Examinations to investigate issues such as the timing and nature of the Debtors' contacts

with UpRight staff and the local attorneys, as well as the reason for the extended delays in filing

the bankruptcy petitions during which many Debtors were subjected to garnishments, state court

actions, repossessions and other collection efforts as described more precisely in the Findings of

Facts. These issues relate to the Debtors and to the administration of their cases. Further, the fact

that the Trustee is still in the process of scheduling and taking 2004 Examinations shows that

there are pending matters before the Court and that these cases should not be closed.

UpRight argues that because the U.S. Trustee has neither objected to the Final Reports or

the discharge orders in these cases nor filed any contested matters, the cases are required to be

closed under Rule 5009.   In support of this contention, UpRight relies on *In re Kelco Metals,*

*Inc.,* 532 B.R. 912 (Bankr. N.D. Ill. 2015). However, this reliance is misplaced. In *Kelco*, a

creditor sought to amend the Chapter 7 Trustee's Final Report to include its untimely filed claim

prior to the closing of the case. Nothing in *Kelco* requires a court to discharge a trustee or close a

case at any certain time, even if the case is deemed fully administered. Further, citing to Rule

Section 350 and Rule 5009, and as noted above, the Court in *Kelco* stated, "The purpose of the

final report is, therefore, to establish the presumption of full administration. Once said

presumption arises, the case is *capable* of being closed" (emphasis added) *Id.* at 923.

Accordingly, the Court is not "required" to close the case in the absence of an objection to the

Final Report as UpRight suggests.

Additionally, as previously stated in the Findings of Fact, the U.S. Trustee has filed an

adversary complaint in *In re Potter*, Case No. 19-60216, Adv. 20-4008 seeking disgorgement of

attorney's fees based upon information obtained from the 2004 Examinations of the Debtors and

UpRight local attorney, Eric Homa. The adversary complaint is fact intensive and provides a

thorough overview of UpRight's allegedly abusive practices, all of which was derived from the

2004 Examinations in this case.  The cases should remain open at least until the 2004

Examinations have taken place and the U.S. Trustee has had an opportunity to evaluate the

testimony and file additional actions, if necessary.

UpRight also relies on *In re Koza*, 375 B.R. 711 (1st Cir. B.A.P. 2007) to argue that the

case is required to be closed. In *Koza*, a motion to strike the order closing a Chapter 7 case was

filed based on the fact that the trustee's final report was signed by someone other than the

appointed case trustee. *Koza* does provide an overview of what "generally" happens after the

trustee files a final report. *Id.* at 717. However, in *Koza*, there were no pending 2004

Examinations, nor was the Court in the middle of an ongoing investigation into abusive practices

by Debtors' counsel when it decided to close the case.

For the foregoing reasons, the Court is not "required" to close the cases at this time.

Although administratively the case may be capable of being closed, there are pending matters

before this Court that support its decision to keep the cases open.

**b. <u>Discharge of the Chapter 7 Trustee</u>**

The second predicate to case closure is that the Chapter 7 trustee must be discharged. The

Chapter 7 trustee has not been discharged in any of the cases, and neither the Code nor case law

provides a specific time in which the Court must discharge the Chapter 7 Trustee.

**c. <u>The Court's Authority to Review Fees</u>**

Even if the Court determined that the cases had been fully administered and the Chapter 7

trustees had been discharged, the Bankruptcy Court has an independent statutory duty to review

attorneys' fees, even if no objection has been filed.  *See* 11 U.S.C. §329 and Fed. R. Bankr. P.

2017.

Section 329(b) of the Bankruptcy Code provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
    (1) the estate, if the property transferred—
        (A) would have been property of the estate; or
        (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
    (2) the entity that made such payment.

11 U.S.C. § 329.  In interpreting this section, the Seventh Circuit has stated:

nothing in section 329(b) suggests that the bankruptcy court's powers may be exercised only where the court has found some evidence of "overreaching," or where counsel's fee would impact the estate. Rather, the bankruptcy court is authorized to act *whenever it determines that the compensation the debtor has paid or agreed to pay his counsel exceeds the reasonable value of the services provided. No further finding is required.*

*Matter of Geraci*, 138 F.3d 314, 320 (7th Cir. 1998) (emphasis added).

Similarly, Federal Rule of Bankruptcy Procedure 2017(a) provides:

On motion by any party in interest *or on the court's own initiative*, the court, after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code …, to an attorney for services rendered or to be rendered is excessive (emphasis added).

Fed. R. Bankr. P. 2017.

The requirements of 11 U.S.C. §329, which compelled UpRight's Fee Statements, were enacted by Congress to protect debtors from overreaching by counsel and to preserve assets for the benefit of creditors. *In re Geraci*, 138 F.3d at 320, citing H.R. Rep. No. 595, 95th Cong., 2d Sess., at 329, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6285. Likewise, the provisions of the

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), which address attorneys and other debt relief agencies, were enacted "to improve bankruptcy law and practice" and "to correct perceived abuses of the bankruptcy system." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 231-232 (2010). The myriad of concerns expressed in the Court's Findings mirror those acknowledged by Congress in enacting these bankruptcy protections. If there is an abuse of the system, it is the Bankruptcy Court's duty to investigate and to make that determination. The continued progression of the cases and the information from the pending 2004 Examinations better equips the Court in making such determinations.

As referenced in the Findings of Fact, the Court reviewed the bankruptcy schedules in each of the cases, as it does in all bankruptcy filings. Based upon the Court's experience in reviewing attorney's fees in a typical Chapter 7 case, the fees charged by the local attorneys when partnered with UpRight appeared to be egregious.  The review revealed that these local attorneys when acting as UpRight partners, were charging double the amount of fees that they typically charge in their own practices. The additional fees charged in the UpRight cases raise the question of what additional services, if any, are provided to the Debtor by each local attorney's affiliation with UpRight, especially when the Debtors are being subjected to collection actions from their creditors.  The Court is doing exactly what 11 U.S.C. §329 and Rule 2017 authorize it to do, which is to make a determination on whether the fees charged by UpRight were excessive in light of the services rendered. So many concerns exist regarding UpRight's representation that the Court is using its statutory authority to investigate and make a determination regarding the reasonableness of attorney's fees.

Finally, under 11 U.S.C. § 105(a), the Bankruptcy Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

41

Notwithstanding any other provision, the Bankruptcy Court may, *sua sponte*, "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." *See In re Tabor*, 583 B.R. 155 (Bankr. N.D. Ill. 2018); *In re Ebel,* 371 B.R. 866, 868 (Bankr. S.D. Ill. 2007).

As discussed *supra*, each of these cases were initially brought to the Court's attention after a review of the Debtors' schedules indicated that the local attorneys were charging significantly more when filing cases under the UpRight name than when they were filing under their own practice. Additionally, in several cases, the Statements of Financial Affairs revealed instances where the Debtors were subjected to wage garnishments, vehicle repossessions, and state court collection suits—the very actions that bankruptcy was designed to prevent-- all while waiting for UpRight to file their cases. These troubling revelations prompted the Court to conduct status hearings and to require the local attorneys to file Fee Statements. These Fee Statements show that Debtors would go *months* after retaining UpRight before ever speaking or meeting with an attorney. The Statements also reflect that non-attorney staff members were speaking to the Debtors regarding their creditors and garnishments and were also deciding under which chapter of the Bankruptcy Code the Debtors should file. All of these instances led the U.S. Trustee to conduct 2004 Examinations in order to collect more facts about the Debtors' representation. The Court's process of keeping the cases open and proceeding with the 2004 Examinations is necessary to determine whether there has been an "abuse of process" by UpRight.

## II.    UpRight's Equal Protection Rights Have Not Been Violated

UpRight's Motion alleges the Court's undertaking to investigate UpRight Law "for fee-related reasons or otherwise" violates equal protection because it applies *only* to UpRight Law.

This is incorrect. The Court has examined attorney's fees in numerous other cases for quite some time.

As support for its equal protection claim, UpRight cites to *Matter of Geraci*, 138 F.3d 314 (7th Cir. 1998). In *Geraci,* the court had established a presumptively reasonable fee for no asset consumer bankruptcy cases. *Id.* at 316. An attorney argued he was denied equal protection because the court required him to justify charges when he disclosed his fee, which was in excess of the presumptively reasonable fee. *Id. a*t 351. The Seventh Circuit found that Geraci had waived his constitutional challenge but noted that even if it had not been waived, the argument was based on false factual premises, including that the same presumptively reasonable fee also applied to other firms. *Id.* Further, *Geraci* provides, "the bankruptcy court is authorized to act whenever it determines that the compensation the Debtor has paid or agreed to pay his counsel exceeds the reasonable value of the services provided." *Id*. at 320. This is exactly what the Court is in doing in the UpRight cases. The 2004 Examinations are being used by the Court and the U.S. Trustee to determine whether the inflated fees charged by UpRight attorneys are reasonable when so many of the Debtors were subjected to their creditors, amongst other issues, during the course of their representation with UpRight.

UpRight further relies on *Frederickson v. Landeros*, 943 F.3d 1060 (7th Cir. 2019) to argue that equal protection violations can occur with respect to a "class of one," where government actors have singled out a target for differential treatment without a rational basis. In *Fredrickson,* a homeless sex offender alleged that a police officer prevented him from updating his sexual offender registration and used his official position to harass the offender, in violation of his equal protection rights. *Id*. at 1056. The Court's inquiry was whether the plaintiff adequately alleged that the state actor intentionally discriminated against him without any

rational basis for this differential treatment. *Id.* at 1060. As noted by the United States Trustee, UpRight has continuously been provided with the statutory basis for the Court's inquiry into their actions and has provided plenty of examples in both its orders and court hearings as the basis for inquiring into UpRight's practice. The instances iterated in the Findings of Fact coupled with the Court's statutory authority to review attorney's fees provide the basis for an investigation into UpRight's fees and services and is not a violation of its equal protection rights.

### III.   UpRight's Due Process Rights Have Not Been Violated

UpRight also alleges that its due process rights have been violated, citing to *In re Ingersoll,* 238 B.R. 202 (D. Colorado 1999) as support. In *Ingersoll,* a presumptively reasonable fee was set for Chapter 13 cases by judges in the District. *Id.* at 203. If an attorney asked for an amount over the presumptive fee, they were required to submit a lengthy form explaining the fees. *Id.* The judge would then decide the amount of attorney's fees that were appropriate by checking off boxes in a form order that provided reasons why the attorney would not receive the full amount. *Id.* at 203-204. For example, a few of the boxes the judge would check were (1) "Insufficient support for attorney and/or paralegal hourly rates charged or insufficient evidence of rates for comparable services outside of bankruptcy;" (2) "Attorney has failed to properly delegate tasks or has billed at his/her full hourly rate for tasks which should have been delegated to a professional who bills at a lower hourly rate;" (3) "Clerical and/or secretarial time has been billed at attorney or paralegal rates;" (4) "Attorney has failed to exercise billing judgment, for example, by billing for time to correct the attorney's mistakes, unproductive time or duplicative services." *Id.* at 205. There was never a hearing conducted on the attorney's fees. *Id.* at 202. The form was submitted by the attorney, and then the "check-the-box" order was issued by the judge.

*Id.* at 203. UpRight argues that the procedure currently being used by the Court does not provide UpRight with notice of what is at stake.

As stated above, in *Ingersoll*, there were never any hearings on the fee applications. Here, however, the Court has conducted numerous hearings at which UpRight has had the opportunity to state its case. The Court has continuously provided UpRight with notice of the issues that are at stake. For instance, at the November 5, 2019 hearing on the U.S. Trustee's Motions for 2004 Examinations, the Court explained that the examination of UpRight was based on more than the amount of fees charged.[7] The Court voiced its concern that Debtors were making payments to UpRight for periods of over two years while being exposed to their creditors. The Court noted at this hearing that one Debtor in particular, although there are certainly more, might not have even benefited from filing bankruptcy because her only sources of income were Social Security and SNAP benefits. The Court questioned why no waiver of the filing fee filing fee was submitted even though Debtors clearly qualified. The Court stated it wanted to know what was going on with the alleged partnership agreement at UpRight. It wanted to know what value being a part of UpRight added to the substantial fee increase, and why the fee was set by a non-attorney at UpRight. The Court acknowledged that the fees typically charged by attorney Buch are $800-$900, but when he files a case with UpRight, the fee increases to up to $1,800.00. Attorney Ford can handle a case for $700-$800, but when affiliated with UpRight, the fee is $1,700.00. The Court noted on the record that it would like to know who prepares the schedules and advises the Debtor in the months, and sometimes years, it takes the case to be filed. All of these issues were raised on the record at a hearing with UpRight's attorneys.

---

[7] *See* Case No. 19-60216 (Doc. #52) (Transcript of November 5, 2019 hearing)

In each case, a status hearing was conducted on the Disclosure of Attorney Compensation. At those hearings, the Court would note on the record whether it thought the attorney's fees charged were excessive.  It would also address other issues that it had discovered after reviewing the Statements of Financial Affairs, such as state court judgments, delays in filing, and garnishments that the Court had noticed. Subsequently, Motions for 2004 Exams were filed, and again, there were hearings on those Motions where the Court informed UpRight of the issues in each case that led to an investigation. In these hearings, the Court and United States Trustee noted issues on the record with regard to counsels' itemized Fee Statements, including the extensive length of time between the Debtors' first contact with UpRight and their opportunity to speak to an attorney and the fact that non-attorneys appeared to be advising the Debtors in regard to creditors and collection activity. Further, in granting the Motions for 2004 Examinations, the Court entered written orders spelling out the issues and concerns the court had in each case.[8] Finally, at the hearing on September 16, 2020 on the Motions to Close Case, the Court read facts from each case warranting further investigation into the record.[9] UpRight's allegations that it has not been given notice of the issues involved is unfounded. The record in

---

[8] For example, *See* Case No. 19-31596 (Doc. #44) ("The attorney's fees are significantly higher than those typically charged by the UpRight local partner attorney, Ronald Buch, when he files a case under his own name and not under the UpRight banner") ("These facts raise questions regarding who advised the Debtor during this time period [prior to filing bankruptcy]") ("Debtor would have been eligible for a waiver of the bankruptcy filing fee.  It is unclear whether Debtor was aware of her option to request that the bankruptcy filing fee be waived")(" it is unclear who the Debtor was getting advice from during [state court] proceedings"); *See* Case No. 19-40714 (Doc. #47) (The attorney's fees are significantly higher than those typically charged by the UpRight local partner attorney, James Ford, when he files a case under his own name and not under the UpRight banner") ("The dearth of contact between the Debtors and UpRight from September, 2017 until the case was reassigned to attorney Ford in November, 2018 raises questions regarding why the Debtors, who had already begun payments to UpRight, were not receiving representation during this time period") ("Investigation is warranted into this matter to determine the status of the Debtors' property and why a motion to redeem was not filed according to the Debtors' stated intentions)(" An examination of the refund is warranted as it relates to the property of the Debtors and the administration of their estate. The refund further raises concerns as to UpRight's status as an obligor of the Debtors, and how the refund may relate to the timing of the Debtors' bankruptcy filing. As the Chapter 7 Trustee has already filed her Report of No Distribution, the Debtors now appear entitled to receive this refund").
[9] *See* Case No. 19-6021, Doc.#78, Transcript from September 16, 2020 hearing

each case is replete with the Court's concerns and UpRight's due process rights have not been violated.

## **CONCLUSION**

Based upon the foregoing, the Motions to Close Case filed by UpRight Law, LLC and the Debtors are DENIED. A separate Order shall enter.

ENTERED: October 30, 2020

/s/ Laura K. Grandy

UNITED STATES BANKRUPTCY JUDGE